IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| James N. Evans, *individually and as owner/agent of Club Ro-Za Bar & Grill,* Club Ro-Za Bar & Grill *d/b/a Club Ro-Ze* | ) ) ) ) ) | |
| Plaintiffs, | ) ) | No. 2:17-cv-00712-DCN |
| vs. | ) ) ) | **ORDER** |
| Nautilus Insurance Company, | ) ) | |
| Defendant. | ) ) ) | |

This matter is before the court on defendant Nautilus Insurance Company's ("Nautilus") motion for summary judgment, ECF No. 23. For the reasons set forth below, the court grants the motion.

**I. BACKGROUND**

This matter arises out of an insurance contract. Compl. ¶ 2. James N. Evans ("Evans") owns and operates Club Ro-Za Bar and Grill ("Club Ro-Za") (together, "plaintiffs"). Nautilus had issued a commercial general liability insurance policy (the "Policy") for Club Ro-Za, with effective dates of February 2, 2012 to February 2, 2013. Pl.'s Resp., 2. On September 3, 2012, Tirele Green ("Green") was in a vehicle when he was shot by a patron of Club Ro-Za. Id. Plaintiffs contend that Green was shot inadvertently while the patron fired his weapon indiscriminately as a result of his drunken state. Id. Nautilus, on the other hand, contends that the shooting was an intentional assault. On or about November 5, 2014, Green filed an action in the Charleston County Court of Common Pleas against Evans, alleging premises liability resulting from

1

plaintiffs' negligence in connection with the shooting.  Compl. ¶ 5.  Shortly thereafter, Evans contacted Nautilus to request that it defend and indemnify plaintiffs in accordance with the Policy.  Id. ¶ 6.  Nautilus responded that the Policy provided no coverage and refused to provide a defense.  Id. ¶ 7.  A default judgment was eventually entered against plaintiffs, granting Green $250,000 in actual damages and $1,250,000 in punitive damages.  Id. ¶ 9.

Plaintiffs filed the instant action against Nautilus in state court on February 16, 2017.  ECF No. 1.  The action was removed to this court on March 22, 2017.  ECF No. 5.  Plaintiffs filed an amended complaint on August 3, 2017, alleging the following causes of action: (1) breach of contract; (2) bad faith; and (3) punitive damages.  ECF No. 19.  On September 27, 2017, Nautilus filed a motion for summary judgment, ECF No. 23, to which plaintiffs responded on October 23, 2017, ECF No. 28.  Nautilus replied on October 27, 2017, ECF No. 30, and plaintiffs filed a sur reply on November 3, 2017, ECF No. 32.  The court held a hearing on this motion on December 12, 2017.  This motion is now ripe for the court's review.

## II.  STANDARD

Summary judgment shall be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  Rule 56(c) of the Federal Rules of Civil Procedure requires that the district court enter judgment against a party who, 'after adequate time for discovery . . . fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'"  Stone v. Liberty

Mut. Ins. Co., 105 F.3d 188, 190 (4th Cir. 1997) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)). "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Id. at 248. "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.

"[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Id. at 249. When the party moving for summary judgment does not bear the ultimate burden of persuasion at trial, it may discharge its burden by demonstrating to the court that there is an absence of evidence to support the non-moving party's case. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). The non-movant must then "make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322.

Any reasonable inferences are to be drawn in favor of the nonmoving party. Anderson, 477 U.S. at 255, Webster v. U.S. Dep't of Agric., 685 F.3d 411, 421 (4th Cir. 2012). However, to defeat summary judgment, the nonmoving party must rely on more than conclusory allegations, mere speculation, the building of one inference upon another, or the mere existence of a scintilla of evidence. See Anderson, 477 U.S. at 252;

Stone, 105 F.3d at 191. Rather, "a party opposing a properly supported motion for summary judgment . . . must 'set forth specific facts showing that there is a genuine issue for trial.'" Bouchat, 346 F.3d at 522 (quoting Fed. R. Civ. P. 56(e) (2002) (amended 2010)). If the adverse party fails to provide evidence establishing that the fact-finder could reasonably decide in his favor, then summary judgment shall be entered "regardless of '[a]ny proof or evidentiary requirements imposed by the substantive law.'" Id. (quoting Anderson, 477 U.S. at 248).

### III. DISCUSSION

Nautilus requests that the court grant summary judgment on all of plaintiffs' causes of action based on two grounds: (1) no insurance policy existed on the date of the underlying incident; and (2) even if the policy had been in effect, the shooting constitutes an excluded assault or battery. Mot. Sum. Judg., 1. The court grants summary judgment based on the non-existence of the policy on the date of the shooting and refrains from addressing the question of whether the shooting constitutes an excluded assault or battery.

In February 2012, Nautilus issued the Policy to Ro-Za Bar and Grill, with a policy period extending from February 2, 2012 to February 2, 2013. ECF No. 23-2. On February 2, 2012, plaintiffs entered into a finance agreement with IPFS Corporation ("IPFS") to finance the insurance policy issued by Nautilus. Mot. Sum. Judg., 3. Pursuant to this financing agreement, plaintiffs made monthly payments to IPFS and appointed IPFS as their attorney-in-fact, giving IPFS full authority to cancel the Policy if plaintiffs were to default on their payments. Id. Plaintiffs failed to make a scheduled payment on August 2, 2012, and IPFS mailed plaintiffs a notice of intent to cancel the

4

Policy on August 7, 2012, warning that the Policy would be cancelled if plaintiffs failed to make the overdue payment within ten days. Id. When plaintiffs did not make the payment within ten days, IPFS mailed a Notice of Cancellation to Nautilus on August 27, 2012, cancelling the policy effective September 1, 2012. Id. The shooting of Green occurred two days later.

Nautilus argues that due to the above-referenced notices, the Policy was not in effect at the time of the shooting, and so Nautilus owed no duty to defend or indemnify plaintiffs in the underlying action. Id. at 9. In response, plaintiffs contend that IPFS and Nautilus's attempted cancellation did not comply with South Carolina Code § 38-39-90, and thus the Policy remained in effect at the time of the shooting. Pl.'s Resp., 4. South Carolina Code § 38-39-90, titled "Cancellation of insurance contracts by premium service company," provides as follows:

> (a) If a premium service agreement contains a power of attorney enabling the company to cancel an insurance contract listed in the agreement, the insurance contract may not be canceled by the premium service company unless the cancellation is effectuated in accordance with this section.
> (b) <u>The premium service company shall deliver to the insured at least ten days' written notice of its intent to cancel</u> the insurance contract if there is a default. <u>This notice must be mailed or delivered not more than ten days before the due date</u>.
> (c) Not less than five days after the expiration of the notice required pursuant to the provisions of subsection (b), the premium service company may after that time request in the name of the insured cancellation of the insurance contract by delivering to the insurer a notice of cancellation . . . .

S.C. Code Ann. § 38-39-90 (emphasis added).

Plaintiffs point to the language of the notice of intent to cancel letter to argue that it is inconsistent with the requirements of §38-39-90(b). The first page of the notice says that "[i]f IPFS does not receive the amount due on or before 8/25/12 your financed insurance policies will be cancelled." ECF No. 28-2. The next page of the notice, under

5

a section titled "FOR SOUTH CAROLINA ONLY," states that "WE WILL REQUEST CANCELLATION OF THE POLICIES . . . UNLESS WE RECEIVE FULL PAYMENT OF THE AMOUNT DUE WITHIN TEN DAYS FROM THE DATE OF THIS NOTICE." Id. (capitalization in the original). Plaintiffs argue that because this notice was mailed on August 7, 2017—eighteen days before the "due date" of August 25, 2017 listed in the notice of intent to cancel—it violates § 38-39-90(b), which requires mailing or delivery no more than ten days prior to the due date. Pl.'s Resp., 6. This argument mischaracterizes § 38-39-90(b).

Section 38-39-90(b) sets forth two requirements: (1) the premium service company must give the insured at least ten days' written notice of its intent to cancel, and (2) this notice may not be mailed to the insured more than ten days before the due date. Here, IPFS mailed the notice of intent to cancel on August 7, 2012, and mailed a cancellation letter on August 27, 2012, effective September 1, 2012. This August 7 letter provided more than ten days' written notice to plaintiffs before IPFS cancelled the Policy.[1] Second, IPFS did not mail the notice to plaintiffs more than ten days before the "due date." The phrase "due date" applies to the original due date of the premium. The court interprets the statute as saying that a premium insurance company may deliver a notice of their intent to cancel the insurance contract in advance of an insured party actually defaulting, but they are not allowed to send this notice more than ten days in advance of the due date for the payment on which the insured might default. Plaintiffs

---

[1] Plaintiffs' argument about the disparity between the two deadlines offered in the notice of intent to cancel letter—between August 25, 2017 and "TEN DAYS FROM THE DATE OF THIS NOTICE"—does not alter the analysis. Both of those dates provide at least ten days written notice of the intent to cancel the policy because of the insured's failure to pay the premium.

conflate "due date" with the grace period deadline provided by IPFS. The August 25, 2017 grace period deadline in the notice of intent to cancel letter refers to the date by which the plaintiffs must send in their past-due payment to avoid default. Here, the "due date" under §38-39-90(b) was August 2, 2012, the original date that the monthly premium was due. The notice was mailed on August 7, 2012, not more than ten days before that due date.

Based on the above, the court finds that IPFS followed the proper cancellation procedure, and that the Policy was not in effect on September 3, 2012, when Green was shot. "Liability [for breach of an insurance contract] is predicated on the existence of a valid contract of insurance coverage." Peterson v. W. Am. Ins. Co., 518 S.E.2d 608, 614 (S.C. Ct. App. 1999), citing Fuller v. E. Fire & Cas. Ins. Co., 124 S.E.2d 602, 610 (S.C. 1962). Likewise, the first element of an action for bad faith refusal to pay benefits under an insurance contract is "the existence of a mutually binding contract of insurance between the plaintiff and the defendant." Cock-N-Bull Steak House, Inc. v. Generali Ins. Co., 466 S.E.2d 727, 730 (1996). Because there was no contract between Nautilus and plaintiffs at the time of the underlying incident for which plaintiffs sought a defense and indemnification, the court grants summary judgment to Nautilus on plaintiffs' breach of contract and bad faith claims.

## IV. CONCLUSION

For the foregoing reasons, the court **GRANTS** Nautilus's motion for summary judgment.

**AND IT IS SO ORDERED**.

_____
**DAVID C. NORTON
UNITED STATES DISTRICT JUDGE**

**January 12, 2018
Charleston, South Carolina**